Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON WILDLIFE FIRST, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KELLY SUSEWIND, et al., <br><br> Defendants. | No. 3:26-cv-05333-TMC <br><br> DEFENDANTS' MOTION TO DISMISS <br><br> NOTE ON MOTION CALENDAR: <br> July 20, 2026 |

DEFENDANTS' MOTION TO DISMISS
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FACTS .................................................................................................................2

       A.    WDFW and the Commission .................................................................... 3

       B.    The Parties .............................................................................................. 3

       C.    The Commission's Role in Policy Disputes ............................................. 4

       D.    Conflict at the Commission ...................................................................... 4

       E.    Public Records Compliance Questions. ................................................... 5

       F.    The Knoll Memo ...................................................................................... 7

       G.    OFM Opens an Investigation But Takes No Action Against
             Plaintiffs .................................................................................................. 9

       H.    Plaintiffs' Lawsuit ................................................................................. 10

III.   ARGUMENT ......................................................................................................11

       A.    Legal Standards ..................................................................................... 11

       B.    All Plaintiffs Lack Standing ................................................................... 12

       C.    Smith's Claims Fail on the Merits ......................................................... 14

             1.    Smith does not allege adverse action ......................................... 15

                   a.)    An internal memo and an ongoing investigation are
                          not adverse actions ......................................................... 15

                   b.)    The remaining allegations do not amount to adverse
                          action .............................................................................. 18

                   c.)    Smith cannot face adverse action from subordinates
                          in the agency she oversees ............................................. 20

             2.    Smith does not allege that she engaged in protected speech
                   as a private citizen .................................................................... 21

             3.    Smith's claim is also barred by the political nature of her
                   role ........................................................................................... 24

             4.    Smith's claims fail under *Pickering* balancing ......................... 25

DEFENDANTS' MOTION TO DISMISS – i
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

D.    The Court Should Dismiss Nonprofit Plaintiffs' Claims .................................... 26

E.    Qualified Immunity Bars the Individual-Capacity Claims ................................. 28

F.    Leave to Amend Should Be Denied................................................................. 29

IV.    CONCLUSION ......................................................................................................... 29

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................. 11, 19

*Branti v. Finkel*,
   445 U.S. 507 (1980)...................................................................................................... 24

*Cal. Pro-Life Council, Inc. v. Getman*,
   328 F.3d 1088 (9th Cir. 2003) ..................................................................................... 13

*Camreta v. Greene*,
   563 U.S. 692 (2011)...................................................................................................... 28

*Capp v. Cnty. of San Diego*,
   940 F.3d 1046 (9th Cir. 2019) ................................................................................ 12, 27

*Boquist v. Courtney*,
   32 F.4th 764, 779 (9th Cir. 2022) ................................................................................ 21

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...................................................................................................... 14

*Colson v. Grohman*,
   174 F.3d 498 (5th Cir. 1999) ....................................................................................... 16

*Dodge v. Evergreen Sch. Dist. #114*,
   56 F.4th 767 (9th Cir. 2022) ........................................................................................ 15

*Earls v. North Carolina Judicial Standards Commission*,
   703 F. Supp. 3d 701 (M.D.N.C. 2023) .................................................................. 17, 18

*Elrod v. Burns,*
   427 U.S. 347 (1976)...................................................................................................... 24

*Eng v. Cooley*,
   552 F.3d 1062 (9th Cir. 2009) ........................................................................... 11, 21, 25

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)...................................................................................................... 13

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006)................................................................................................. 14, 21

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)........................................................................................................... 27

*Hernandez v. Cook Cnty. Sheriff's Office*,
  634 F.3d 906 (7th Cir. 2011) ............................................................................................. 23

*Houston Cmty. Coll. Sys. v. Wilson*,
  595 U.S. 468 (2022)............................................................................................... 20, 21, 27

*Jones v. Fitzgerald*,
  285 F.3d 705 (8th Cir. 2002) ............................................................................................. 16

*Lathus v. City of Huntington Beach*,
  56 F.4th 1238 (9th Cir. 2023) ............................................................................................ 24

*Leonard v. McMenamins, Inc.*,
  2022 WL 4017674 (W.D. Wash. Sept. 2, 2022)......................................................... 12

*Linthicum v. Wagner*,
  94 F.4th 887 (9th Cir. 2024) .............................................................................................. 22

*Los Angeles Press Club v. Noem*,
  171 F.4th 1179 (9th Cir. 2026) .......................................................................................... 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................................ 12

*McNaught v. Nolen*,
  76 F.4th 764 (8th Cir. 2023) .............................................................................................. 12

*Moore v. Garnand*,
  83 F.4th 743 (9th Cir. 2023) ......................................................................................... 16, 28

*Moran v. Washington*,
  147 F.3d 839 (9th Cir. 1998) ........................................................................................ 25, 28

*Mulligan v. Nichols*,
  835 F.3d 983 (9th Cir. 2016) .............................................................................. 17, 20, 26, 27

*Murthy v. Missouri*,
  603 U.S. 43 (2024)............................................................................................................. 14

*Nunez v. City of Los Angeles*,
  147 F.3d 867 (9th Cir. 1998) ............................................................................................. 19

*O'Handley v. Weber*,
  62 F.4th 1145 (9th Cir. 2023) ............................................................................................ 26

DEFENDANTS' MOTION TO DISMISS – iv
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Pearson v. Callahan*,
    555 U.S. 223 (2009)....................................................................................................... 28

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty.*,
    391 U.S. 563 (1968)....................................................................................................... 11

*Sullivan v. Univ. of Washington*,
    60 F.4th 574 (9th Cir. 2023) ..................................................................................... 21, 22

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022) ....................................................................................... 12

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
    770 F.3d 834 (9th Cir. 2014) ......................................................................................... 29

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ........................................................................................... 2

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001) ................................................................................... 24, 25

*Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
    593 F.3d 196 (2d Cir. 2010)........................................................................................... 23

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ....................................................................................... 16

*Zorn v. Linton*,
    146 S. Ct. 926 (2026)..................................................................................................... 28

**Washington State Statutes**

RCW 43.06.070 ...................................................................................................... 3, 18, 20

RCW 77.04.012 ............................................................................................................... 3, 4

RCW 77.04.030 .................................................................................................................. 3

RCW 77.04.055 ...................................................................................................... 3, 20, 25

RCW 77.04.080 .................................................................................................................. 3

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 11

DEFENDANTS' MOTION TO DISMISS – v
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.    INTRODUCTION

Wildlife management in Washington State is contested terrain. The Washington Department of Fish and Wildlife (WDFW) is charged with preserving and protecting wildlife while maximizing recreational hunting and fishing opportunities. Its governing body—the nine-member Fish and Wildlife Commission (the Commission)—regularly navigates sharp disagreements about how to achieve these goals. Plaintiff Commissioner Lorna Smith is one of those members. Since her appointment in 2021, she has been a vocal and effective advocate for conservation-oriented policies, aligning herself with organizations that share her views. She remains a commissioner today, with the same vote, the same voice, and the same authority she has always had—including the authority to hire and fire the Director she now accuses of retaliating against her.

In this lawsuit, Smith asks this Court to hold that her WDFW subordinates—Defendants Director Kelly Susewind and Deputy Director Amy Windrope—violated the First Amendment by raising compliance concerns about Smith's conduct through official channels to the Governor. That claim is legally deficient on multiple levels. The First Amendment does not protect speech made by public officials acting pursuant to their official duties, and every act Smith identifies as protected was undertaken in her official capacity. Nor does the law recognize a First Amendment retaliation claim where that official has suffered no removal, no discipline, no sanction, no restriction on her ability to serve, or any other adverse action. And it does not hold subordinate officials liable for raising compliance concerns about their supervisor through official channels to the appointing authority, which is precisely what Smith alleges here. An internal memorandum written by a staffer with no decision-making power—made public not through a leak but through another agency's mandatory compliance with public records law—is not a constitutional violation.

DEFENDANTS' MOTION TO DISMISS – 1
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Plaintiffs Washington Wildlife First (WW1) and its founder Claire Davis (together, Nonprofit Plaintiffs) are active participants in the Commission's policy debates. WW1 attends every Commission meeting, submits comments and testimony on policy proposals, and regularly files litigation challenging agency decisions. None of that has changed. No governmental action has been directed at them. They were never subjects of any investigation, face no restriction on their advocacy, and continue to appear before the Commission and pursue litigation against WDFW to this day. What they characterize as retaliation is, at most, Defendants' alleged disagreement with their policy positions and internal communications expressing that disagreement. But that is just the ordinary friction of a contested political process, not a constitutional violation.

Plaintiffs' claims are so legally deficient that they cannot clear even the threshold requirement of standing: Smith's alleged injuries flow from the independent actions of the Governor and other interest groups, rather than from any act by Defendants, while the Nonprofit Plaintiffs were never subjects of any investigation and face no restriction on their advocacy whatsoever. The merits of their claims are no stronger, and the individual-capacity claims are independently barred by qualified immunity. The Court should dismiss all claims with prejudice.

## II.      FACTS

This factual summary is based upon the allegations in the Complaint and documents incorporated by reference into the Complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Specifically, Plaintiffs incorporate into the Complaint the May 8, 2025 email and memo from Director Susewind to Thomas Knoll directing him to assess certain documents, Dkt. 1 (Compl.) ¶ 160, and the May 16, 2025 memorandum authored by Thomas Knoll, *id.* ¶¶ 161, 174–76, 180–201; *see* Declaration of W. Scott Ferron (Ferron Decl.), Exs. A–B.

DEFENDANTS' MOTION TO DISMISS – 2
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### A.    WDFW and the Commission

WDFW is a state agency tasked with managing wildlife in Washington state. RCW 77.04.012. WDFW's work involves balancing diverse, complex interests: it must "preserve, protect, perpetuate, and manage the wildlife and food fish, game fish, and shellfish" and "maximize" "recreational game fishing and hunting opportunities" in Washington, so long as it does not "impair the supply" of wildlife resources. *Id.*

WDFW is governed by a nine-member Commission whose members are appointed by the Governor to staggered six-year terms. RCW 77.04.030. Commissioners may be removed by the Governor "for incompetency, misconduct, or malfeasance in office." RCW 43.06.070. The Commission is charged with establishing state fish and wildlife policy, appointing the WDFW director, and exercising final approval authority over agency budget proposals and rulemaking. RCW 77.04.055. Commission meetings are open to the public and regularly attended by advocates on different sides of wildlife policy debates. Compl. ¶ 78.

### B.    The Parties

Defendant Susewind, WDFW's current director, *id.* ¶ 32, is responsible for "supervis[ing] the administration and operation of the department" and other duties "delegated by the commission." RCW 77.04.080. Only the Commission has the "power to hire and fire" Director Susewind, Compl. ¶ 29, because the Director "serve[s] at the pleasure of the commission," RCW 77.04.055(7). Defendant Amy Windrope, WDFW's Deputy Director, works alongside Susewind on his executive management team. Compl. ¶ 34.

Plaintiff Lorna Smith is a WDFW Commissioner who was appointed by then-Governor Jay Inslee in December 2020. *Id.* ¶ 65. According to Smith, prior to her appointment, most sitting

DEFENDANTS' MOTION TO DISMISS – 3
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

commissioners were pro-hunting, *id.* ¶ 64, and her appointment caused "backlash from hunting groups," *id.* ¶ 69.

Plaintiff WW1 is a nonprofit founded by Plaintiff Claire Davis out of "frustrations" with WDFW policy. *Id.* ¶ 72. "WW1's mission is to transform Washington's approach to fish and wildlife policy into a more democratic paradigm that elevates science, recognizes the intrinsic value of individual animals, and prioritizes protecting, preserving, and perpetuating wild lives and ecosystems." *Id.* ¶ 73. WW1 sends a representative to every WDFW meeting and regularly submits comments, testimony, and rulemaking petitions opposing management recommendations. *Id.* ¶¶ 75, 79.

### C.    The Commission's Role in Policy Disputes

The Commission is charged with balancing its complex statutory mandates of preserving and protecting wildlife while maximizing recreational hunting and fishing opportunities. RCW 77.04.012. The Commission frequently navigates disagreements between organized hunting, fishing, and commercial interests and wildlife conservation advocates, each of whom seek to influence Commission policy through public testimony, rulemaking petitions, appointments, and litigation. Compl. ¶¶ 51, 75–76. These constituencies regularly appear before the Commission, and contested votes routinely generate organized advocacy responses from both sides. *Id.* ¶ 76.

### D.    Conflict at the Commission

The Complaint chronicles several policy disputes that embroiled the Commission in recent years. These disputes reflect the broader tension over some commissioners' views of WDFW's mandates. The Commission regularly received recommendations from agency management, heard testimony from advocacy organizations and members of the public on multiple sides, and

DEFENDANTS' MOTION TO DISMISS – 4
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

ultimately made its own independent policy judgments. Reasonable commissioners disagreed, often sharply, about the right answers to these questions.

For example, in 2021 and for several years prior, the Commission approved its director's proposed annual rule update allowing a spring bear hunting season. *Id.* ¶¶ 87, 90. This "became a central point of conflict" when Plaintiffs advocated against spring bear hunting due to ecological concerns. *Id.* ¶ 86. When the Commission considered proposed rules that would have authorized a 2022 spring bear hunt, WW1 organized "nearly 100 people to speak against the hunt." *Id.* ¶ 94. During Commission deliberations, Smith raised what she characterized as ethical concerns and worries about bear populations. *Id.* ¶ 98. The 2022 spring bear hunt was not approved. *Id.* ¶¶ 100, 109. Smith alleges she faced public criticism for her position, including a petition for her recall. *Id.* ¶ 103.

The Complaint alleges similar divisions across many policy areas related to WDFW's mission. *See id.* ¶ 120 (wolf management), ¶ 122 (salmon hatcheries); ¶ 123 (cougar and bear hunting), ¶ 124 (cougar management). Across these disputes, the Commission's votes frequently divided along consistent lines, with commissioners holding differing views about the appropriate balance between consumptive and non-consumptive wildlife management and the weight to be given to agency management recommendations. *See id.* Those votes were, in short, the ordinary business of a politically divided policymaking body navigating contested terrain.

E.    **Public Records Compliance Questions**

The public controversy over Commission business also spurred public records requests. Beginning in 2021, commissioners who opposed spring bear hunting and other management recommendations received numerous public records requests seeking their communications about Commission matters. *Id.* ¶ 152. These requests reflected the reality that Commission business—

DEFENDANTS' MOTION TO DISMISS – 5
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

including commissioners' deliberations, communications with advocacy organizations, and coordination with fellow commissioners—is subject to Washington's Public Records Act (PRA), ch. 42.56 RCW.

Compliance with these obligations presented challenges for some commissioners. Smith alleges that WDFW was slow to provide her with functional state-issued devices and that those eventually issued were unreliable. Compl. ¶ 188. But the Complaint acknowledges that WDFW and the Attorney General's Office issued guidance instructing commissioners to use only agency email accounts for Commission business, and that Smith was specifically directed to cease using her personal email account for Commission matters. *Id.* ¶¶ 187–88. Yet Smith continued to use personal email for Commission business, leaving it unclear whether she had preserved and produced all records responsive to requests. *Id.* Similar questions about compliance with the Open Public Meetings Act (OPMA), ch. 42.30 RCW, arose repeatedly during this period, including in connection with a webinar on carnivore-livestock conflict that Smith organized after being unable to host a panel discussion through a formal committee meeting. Compl. ¶¶ 196–99.

Against this backdrop, the U.S. Sportsmen's Alliance Foundation (SAF) submitted a public records request in September 2023 seeking communications from commissioners who had voted to ban spring bear hunting. *Id.* ¶ 152. SAF subsequently sued WDFW alleging it delayed responding to the request. *Id.* Separately, Commissioner Tim Ragen's term expired and he returned his laptop to WDFW, providing an additional source of records for review. *Id.* ¶¶ 154, 156. Smith alleges that Defendants "directed staff to begin searching Smith and Ragen's laptops" but does not allege that WDFW staff ever had possession of Smith's laptop or actually searched it. *Id.* ¶ 157.

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

WDFW produced thousands of records to SAF in May 2025, including commissioners' emails, calendar entries, and other communications, that raised questions about commissioners' compliance with PRA retention obligations and OPMA meeting requirements. *Id.* ¶¶ 152, 187–93.

**F.      The Knoll Memo**

Following the PRA production, Susewind requested that Thomas Knoll, who works in WDFW's enforcement division, independently review certain public records obtained from several commissioners. *Id.* ¶ 160, *see also* Ferron Decl., Ex. A. Specifically, Susewind asked Knoll to make an "independent assessment" of "whether the records indicate inappropriate conduct," which "would include violating applicable laws and/or rules" or "policies (including the Commission's Rules of Procedure), creating a conflict of interest or the appearance of [one]," or "other behavior that hinders or risks the agency's ability to complete its mission." Ferron Decl., Ex. A at 2.

Knoll completed a memorandum on May 16, 2025 (the Memo). Compl. ¶ 161. Although the Complaint takes issue with Knoll's characterizations of events and allegedly inflammatory tone, it does not contest the underlying facts described in the Memo:

- The Memo found that Smith delayed in responding to a September 2023 public records request. Ferron Decl., Ex. B. The Memo further found that, during a pending 2025 public records lawsuit, it was "not entirely clear" that "Smith ha[d] been forthcoming with [her] responsive records." *Id.* at 7. It also found that Smith used personal email and devices as "a consistent way of doing business" for Commission matters, and characterized her continued use of personal email and devices after being instructed otherwise as reflecting an unwillingness to "follow direction." *Id.* at 6–7. The Complaint does not dispute that Smith delayed responding to the September 2023 PRA request or that she used personal email after receiving direction to stop. To the

DEFENDANTS' MOTION TO DISMISS – 7
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

contrary, the Complaint acknowledges both that Smith used personal email for Commission business and that she received instructions to cease doing so. Compl. ¶¶ 187–88.

- The Memo found that Smith was among three commissioners who received an email from Plaintiff Davis inviting them to discuss a pending lawsuit Davis had filed against WDFW. The Memo stated that this appeared to "violate the Rules of Professional Conduct" and the Commission's Rules of Procedure, and that it "seem[ed] to indicate they may be colluding with an opposing party to the detriment of WDFW." Ferron Decl., Ex. B at 5. The Complaint does not dispute that Smith received this communication or that meetings with Davis occurred.

- The Memo found that Smith, Ragen, and Commissioner Melanie Rowland had twenty private meetings with WW1 and other "animal rights interest groups" from early 2022 through 2023, with Davis present at each, and that eight of these meetings occurred just prior Commission meetings. *Id.* at 5. The Memo stated that it "appear[ed] that the Commissioners may have been colluding with the special interest groups for the purpose of propagating an 'agenda.'" *Id.* The Complaint disputes the characterization of these meetings but does not dispute that the meetings occurred. Compl. ¶¶ 207–09.

- The Memo found that Davis sent Ragen an email containing a link to a spreadsheet listing current and potential commissioners along with special interest groups' opinions about them, and stated it is "reasonable to conclude" the document was shared with Smith and Rowland. Ferron Decl., Ex. B at 6. The Complaint does not address this allegation.

DEFENDANTS' MOTION TO DISMISS – 8
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

- The Memo found that Smith invited all commissioners to a carnivore panel webinar using her personal email account, that after receiving legal advice that Smith's plan could violate the OPMA she "advocated separately that the other Commission members attend," and that her argument that commissioners could attend showed "a lack of judgment." *Id.* at 7–8. The Complaint disputes the latter characterization but does not dispute the Memo's factual description.

- The Memo characterized Smith's compensation requests as "suspicious" because she claimed payment for work performed nearly every day from January 2024 through February 2025, calling this "unreasonable" for a part-time position. *Id.* at 8. The Complaint does not address this point.

**G.     OFM Opens an Investigation But Takes No Action Against Plaintiffs**

In May 2025, SAF filed a petition asking Governor Bob Ferguson to remove Commissioners Smith, Rowland, John Lehmkuhl, and Barbara Baker from office. Compl. ¶ 162. Plaintiffs allege that after receiving the Memo, Director Susewind forwarded the Memo and the underlying documents to the Governor's Office. *Id.* ¶ 165. In an email to Director Susewind, Baker (then-Commission Chair) stated that an "accurate" view of events was that "our [Public Disclosure Request] staff and the AG's office had some concerns and flagged them to your office. You and Amy [Windrope] looked at them and felt that the concerns were valid and were high enough that you needed to alert the [G]overnor's office." *Id.*

On June 20, 2025, the Office of Financial Management (OFM) signed a contract with an investigator regarding members of the Commission. *Id.* ¶ 167. Although the Memo had focused on Smith and Rowland, the Complaint alleges that OFM's investigation concerned all four commissioners named in the SAF petition: Smith, Rowland, Baker, and Lehmkuhl. *Id.*

DEFENDANTS' MOTION TO DISMISS – 9
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

In early 2026, in response to two public records requests—one from a news outlet and one from SAF—the Memo was released as a public record by OFM. *Id.* ¶¶ 174–75. SAF "posted [the Memo] publicly" on March 31. *Id.* ¶ 175.

Smith then submitted her own public records request to WDFW for the Memo and the underlying documents. *Id.* ¶ 176. Shortly after submitting her request, Smith travelled to Deputy Director Windrope's office and obtained a box of documents Windrope stated likely contained the documents Knoll reviewed when writing the Memo. *Id.* A WDFW records officer later told Smith that WSDFW provided her these documents in her role as a commissioner, and that she should not disclose or distribute the documents because they contained "unredacted confidential information." *Id.* ¶ 178. Smith alleges, despite the fact that she obtained these documents by walking into the office of her subordinate (rather than through standard PRA channels), that "these documents were provided to her in response to a public disclosure request, meaning that WDFW has waived its privilege" and that she could do whatever she chose with them. *Id.* ¶ 179.

**H.      Plaintiffs' Lawsuit**

On April 2, 2026, Plaintiffs filed the Complaint against Director Susewind and Deputy Director Windrope in both their official and individual capacities. All three Plaintiffs bring claims of First Amendment retaliation. *Id.* ¶¶ 227–67.

Although Plaintiffs allege OFM opened its investigation of Smith and the other three commissioners in the summer of 2025, Smith does not allege that she has been removed or faced discipline—formal or informal—of any kind, or received any official sanction.  Davis and WW1 likewise do not allege any discipline or restriction on their speech, government access, or political activity.

DEFENDANTS' MOTION TO DISMISS – 10
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### III.    ARGUMENT

#### A.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Whether a complaint states a claim for relief "requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

First Amendment retaliation claims broadly fall into two categories relevant here: (1) those brought by government employees or officials in the employment context, and (2) those brought by members of the public.

The first category is governed by the five-element test derived from *Pickering v. Board of Education of Township High School District 205, Will County*, 391 U.S. 563, 568 (1968), and its progeny. The plaintiff must first show that: (1) she spoke on "a matter of public concern," (2) "in the capacity of a private citizen and not a public employee," and (3) "the state took adverse employment action and that the speech was a substantial or motivating factor in the adverse action." *Eng v. Cooley*, 552 F.3d 1062, 1070–71 (9th Cir. 2009) (cleaned up). If the plaintiff succeeds, the burden shifts to the government to show (4) the "state's legitimate administrative interests outweigh the employee's First Amendment rights," or (5) alternatively, that the state "would have reached the same adverse employment decision even in the absence of the employee's protected conduct." *Id.* at 1071–72 (cleaned up).

For the second First Amendment retaliation category, a private citizen must similarly demonstrate that (1) she "engaged in a constitutionally protected activity," (2) "the defendant's

DEFENDANTS' MOTION TO DISMISS – 11
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

actions would chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) "the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (cleaned up). The plaintiff ultimately "must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Id.* (cleaned up).

### B.    All Plaintiffs Lack Standing

All three plaintiffs lack Article III standing. To establish standing, a plaintiff must demonstrate a concrete and particularized injury-in-fact, a causal connection between that injury and defendants' conduct, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs miss all three marks.

***Injury-in-fact.*** Smith alleges five categories of injury: chilling of her speech, reputational harm, emotional distress, personal safety concerns, and interference with her duties. None is cognizable. First, her chilling allegation, Compl. ¶ 240, is directly contradicted by the Complaint, which depicts her as "openly resist[ing]" Defendants and never changing her conduct in any respect, *id.* ¶ 232. A "naked assertion" of attempted chilling contradicted by the Complaint's own allegations cannot establish injury-in-fact. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022); *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1188 (9th Cir. 2026). Second, the reputational harm Smith alleges likewise amounts to "naked assertions of reputational harm [which] fall short of plausibly establishing injury." *McNaught v. Nolen*, 76 F.4th 764, 771 (8th Cir. 2023) (cleaned up). Third, Smith's "perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *Leonard v. McMenamins, Inc.*, No. 2:22-cv-94-BJR, 2022 WL 4017674, at *4 (W.D. Wash. Sept. 2, 2022). Finally, the personal safety concerns she alleges predate the alleged

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

retaliation entirely—the Complaint links the threats she received to the spring bear vote in 2021, Compl. ¶ 102, years before Knoll wrote the Memo. Injuries that predate the alleged wrongful conduct cannot create standing.

Nonprofit Plaintiffs' alleged injuries are even more illusory. No governmental action was directed at *them*; the only conduct they allege targeted *Smith* and other commissioners, not WW1 or Davis. Without a concrete governmental action aimed at them, Nonprofit Plaintiffs have no cognizable injury-in-fact as third parties, regardless of how that action allegedly affected them. And WW1 cannot plausibly claim reputational harm from being characterized as an "animal rights" organization when its own mission calls for "recogniz[ing] the intrinsic value of individual animals." Compl. ¶¶ 250, 254; *see California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003). WW1's remaining allegations of donation decline and resource diversion are categorically insufficient to establish organizational standing. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024).

**Traceability.** Even if any Plaintiffs' alleged injuries were sufficiently concrete and particularized to satisfy the injury-in-fact requirement, none are fairly traceable to Defendants' actions. The Governor independently initiated the OFM investigation after receiving communications from multiple sources, including SAF's independent petition for removal, and OFM is investigating all four commissioners SAF targeted—not just the two the Memo focused on. SAF—not Defendants—published the Memo after receiving it via PRA request. Any alleged reputational injury flows from accurate underlying facts she does not dispute: she acknowledges using personal email after being directed to stop and meeting with WW1 on the occasions the Memo identifies. Reputational harm from accurate facts becoming known through the PRA process is not injury caused by Defendants' wrongful conduct. The social media hostility, bar

DEFENDANTS' MOTION TO DISMISS – 13
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

complaints, and hunting community reactions Plaintiffs complain of were acts of independent third parties responding to public controversy, not Defendants. And Nonprofit Plaintiffs' chilling theory depends entirely on commissioners independently deciding to distance themselves from WW1 and Davis—another layer of independent third-party decisions that cannot be attributed to either Defendant. Where injuries flow from the independent decisions of governmental and private actors not before this Court, the traceability requirement is not satisfied. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

**_Redressability._** Likewise, "a federal court cannot redress injury that results from the independent action of some third party not before the court." *Murthy v. Missouri*, 603 U.S. 43, 57–58 (2024). That principle defeats all three Plaintiffs' claims for prospective relief. An injunction against Susewind and Windrope would not halt the OFM investigation, which is under the Governor's direction, or prevent the Governor from acting on its findings. Nonprofit Plaintiffs fare no better: they allege no ongoing or future threat of First Amendment violations by Defendants, and their conclusory assertion that Defendants "will continue their ongoing campaign," Compl. ¶ 263, is a speculative assertion that cannot establish "continuing, present adverse effects" to support standing for prospective relief. *Noem*, 171 F.4th at 1188.

### C.    Smith's Claims Fail on the Merits

Smith's *Pickering* claim fails on four independent grounds: (1) she has not suffered adverse action; (2) she has not alleged protected First Amendment activity under *Garcetti v. Ceballos*, 547 U.S. 410 (2006); (3) her policymaker status independently bars her claim under the *Elrod-Branti* doctrine; and (4) the state's legitimate interest in investigating PRA and OPMA compliance satisfies *Pickering* balancing.

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### 1.    Smith does not allege adverse action

To establish an adverse action in the First Amendment retaliation context, a public-employee "plaintiff must prove that the employer's action was reasonably likely to deter [her] from engaging in constitutionally protected speech." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 778 (9th Cir. 2022) (cleaned up). The "key question is whether the retaliatory activity would chill or silence a person of ordinary firmness from continuing to speak out." *Id.* at 779 (cleaned up).

Smith has not suffered an adverse action. She has not been removed from the Commission, formally disciplined, suspended, demoted, or subjected to any official sanction of any kind. She continues to serve as a commissioner, cast votes, chair committee proceedings, and publicly challenge agency management. And the Complaint nowhere alleges that she has changed her behavior in any way. It instead describes her "openly resist[ing]" the alleged efforts of Defendants (her WDFW subordinates) and characterizes their attempts to silence her as having failed. Compl. ¶ 232.

Smith's adverse action theory centers on two investigations—Knoll's internal records review producing the Memo, and an OFM investigation at the Governor's direction—neither of which qualifies as adverse action taken by Defendants. *Id.* ¶ 237. Her remaining allegations, ranging from reputational harm to vague "interference" with her duties fare no better. *Id.* ¶ 240. And her claim fails for a more fundamental structural reason: the officials she accuses of retaliation are her own subordinates who hold no power over her continued service.

### a.)    *An internal memo and an ongoing investigation are not adverse actions*

Smith's allegations regarding adverse action are crystalized in her claim for relief: the alleged adverse action consists of the Defendants' "manufacture of false, misleading and/or defamatory allegations, improper use of WDFW resources to further those false, misleading and/or

DEFENDANTS' MOTION TO DISMISS – 15
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

defamatory allegations, and efforts to persuade Governor Ferguson to open an investigation aimed at Smith's sanction and removal." *Id.* ¶ 237. The center of her claim, then, is the drafting of the Memo, WDFW's sharing of it with the Governor's Office, and the ongoing OFM investigation of Commissioners Smith, Rowland, Lehmkuhl, and Baker. None of these constitutes adverse action.

An investigation, standing alone, does not constitute an adverse action under the First Amendment—even when the investigation is concededly retaliatory. *See, e.g.*, *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999) (plaintiff who "alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations" had not alleged actionable harm under First Amendment); *Jones v. Fitzgerald*, 285 F.3d 705, 715 (8th Cir. 2002) (no adverse action where plaintiff "was not suspended from her job during the investigations . . . was not disciplined, nor was she threatened with discipline").

The Ninth Circuit has acknowledged that an investigation's scope and manner could in egregious circumstances support an adverse action finding, but has made clear that the mere existence of an investigation is insufficient. *See Moore v. Garnand*, 83 F.4th 743, 752 (9th Cir. 2023). The *Moore* court's discussion of *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), illustrates how far Smith's allegations are from that threshold. In *White*, the investigation supported a retaliation claim because government agents questioned plaintiffs under threat of subpoena, directed them to produce documents, publicly accused them of violating the law, and pressured them to accept a proposal agreeing to cease all litigation and public advocacy. *Moore*, 83 F.4th at 752 (summarizing *White*, 227 F.3d at 1220). Smith, in contrast, alleges she was voluntarily interviewed once, in December 2025. Compl. ¶ 173. No findings have issued. No sanctions have been imposed. No government actor has demanded she cease any activity. After nearly a year, the ongoing investigation has produced no consequence of any kind.

DEFENDANTS' MOTION TO DISMISS – 16
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The alleged foundational document of that investigation—the Memo—does not change this conclusion. Smith characterizes the memo as "rife with false, misleading, inflammatory, and defamatory allegations," *id.* ¶ 161, but nowhere disputes its underlying factual predicates. She does not deny using personal email after being instructed to stop, *id.* ¶¶ 187–88, meeting privately with Davis and WW1 on the occasions the Memo identifies, *id.* ¶¶ 207–08, or inviting commissioners to attend the carnivore webinar after receiving legal advice cautioning against it, *id.* ¶¶ 195–99. What she disputes are the characterizations Knoll drew from those uncontested facts. But Knoll is a criminal justice legal liaison in WDFW's enforcement division with no decision-making authority over Smith. *Id.* ¶ 160. His characterizations carry no consequence—they do not trigger discipline, initiate removal, or impose any formal burden on Smith. An internal memorandum written by a mid-level staffer with no power to act does not constitute adverse action. *See, e.g.*, *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016) (no adverse action where defendants did not "make any decision or take any state action affecting [plaintiff]'s rights, benefits, relationship or status with the state" (cleaned up)).

The investigation's alleged retaliatory nature is further undermined by its scope: Baker, one of the four commissioners allegedly under OFM investigation, is described by the Complaint as "shar[ing] Defendants Susewind's and Windrope's hostility toward Davis and WW1 and frequently help[ing] them to control Smith." Compl. ¶ 183. Defendants cannot have been retaliating against Smith for her views while simultaneously investigating the commissioner the Complaint portrays as Defendants' ally.

More fundamentally, Smith's claim fails because Defendants—her subordinates—lack power to take adverse action against Smith. In *Earls v. North Carolina Judicial Standards Commission*, 703 F. Supp. 3d 701, 708 (M.D.N.C. 2023), the court declined to find adverse action

DEFENDANTS' MOTION TO DISMISS – 17
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

where a judicial standards commission investigated a state supreme court justice because the commission lacked power to sanction her—only the supreme court itself could do that: "Plaintiff's argument that her speech is chilled assumes the Commission and the North Carolina Supreme Court are likely to take an adverse, and unconstitutional, action against Plaintiff."

Just as in *Earls*, Defendants lack the power to take adverse action against Smith; only the Governor can remove her. *See* RCW 43.06.070. Smith's theory depends on a chain of speculative assumptions: that OFM will issue adverse findings, that those findings will stem from Defendants' alleged misconduct, and that the Governor will then act against her based on those findings. Even if these assumptions were ultimately to materialize (pure conjecture at this stage), the operative actions would be taken by individuals and government entities that are not parties to this case. A "maybe-someday" adverse action that depends on independent decisions of non-party actors cannot support a retaliation claim; as explained above, that hypothetical injury fails even Article III's more modest injury-in-fact requirement. *See supra* Section III.B.

### b.) *The remaining allegations do not amount to adverse action*

To the extent Smith grounds her adverse action theory in allegations beyond the Memo and OFM investigation, those allegations fail independently.

***Reputational harm.*** The Memo became public when SAF obtained it through a PRA request to OFM and posted it publicly—not through any affirmative acts by Defendants. Compl. ¶ 175. An adverse action must be attributable to Defendants, not to the independent operation of a public disclosure regime Smith does not challenge.

***Emotional distress.*** Emotional distress is a damages category, not an adverse action. Allegations of sleeplessness and headaches, *id.* ¶ 222, describe Smith's reaction to Defendants' alleged conduct—not any formal burden on her protected activity.

DEFENDANTS' MOTION TO DISMISS – 18
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

***Personal safety concerns***. The threats and harassment Smith describes are attributable to pro-hunting constituents and social media users, *id.* ¶¶ 102, 221, 225, not to Defendants, who are not alleged to have threatened her.

***Interference with performing duties.*** Smith's allegations of interference with her duties are too diffuse, speculative, and conclusory to constitute adverse action. The Complaint alleges that Defendants "deliberately isolated" her from staff by "banning employees from speaking directly with [her] without prior authorization." *Id.* ¶ 143. It further alleges that the investigation "effectively paralyzed the Commission," caused meetings to be cancelled, and led commissioners generally to avoid controversial issues. *Id.* ¶ 219. And it alleges that Defendants "pressur[ed]" her to stop voicing her views and end her associations. *Id.* ¶ 234(b).

None of these allegations suffice. Smith does not identify a single specific instance in which a staff member was prevented from speaking with Smith, name any employee who faced retaliation for doing so, or allege any specific information Smith was denied. She presents a bare conclusory assertion that fails under *Iqbal*, 556 U.S. at 678. The investigation's alleged paralysis of the Commission is a systemic effect on the body as a whole, not a particularized burden on Smith. The allegation of "pressur[e]" identifies no mechanism and no official action. Compl. ¶ 234. And Smith does not allege she was ever prevented from voting, attending meetings, or exercising any official function. Her official authority remains untouched.

***Verbal criticism.*** To the extent Smith grounds any adverse action theory in allegations that defendants "snapped at her and berated her during meetings and denigrated her in emails," Compl. ¶ 144, those allegations are legally insufficient. In *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998), the court found no adverse action where the plaintiff was "bad-mouthed and verbally threatened" by superiors but retained his position and suffered no formal consequence. In

DEFENDANTS' MOTION TO DISMISS – 19
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Mulligan*, 835 F.3d at 989, the court held that "accusations and media leaks" were "not enough to demonstrate a constitutional violation" because defendants had not made "any decision or take[n] any state action affecting [plaintiff's] rights, benefits, relationship or status with the state." (cleaned up). Defendants' alleged verbal conduct falls squarely within the category of conduct that *Nunez* and *Mulligan* held insufficient. Sharp words and critical emails between officials who disagree about policy do not constitute adverse action under the First Amendment.

### c.)   *Smith cannot face adverse action from subordinates in the agency she oversees*

Smith's claim also fails to account for her position within WDFW's governance framework. In *Houston Community College System v. Wilson*, 595 U.S. 468, 478–79 (2022), the Supreme Court held that a formal censure "could [not] have materially deterred an elected official like Mr. Wilson from exercising his own right to speak"—because "any fair assessment . . . must account for" the plaintiff's status as a public official.

The same logic applies here. Smith is a gubernatorially-appointed commissioner empowered to set state fish and wildlife policy. RCW 77.04.055. More importantly, she is Defendants' *superior*: Defendant Susewind serves at the Commission's pleasure, RCW 77.04.055(7); Deputy Director Windrope's position is *below his*; and as a commissioner, Smith can only be removed by the Governor, RCW 43.06.070. The Complaint fails to acknowledge that structural reality, nor does it explain how Smith's subordinates could plausibly have chilled her exercise of First Amendment rights.

Indeed, the Complaint's allegations confirm that they did not. Smith "openly resisted Defendants' efforts to chill her speech," and the Complaint repeatedly describes Defendants' "attempts" to silence her without ever alleging those attempts succeeded in changing her behavior or speech in any respect. Compl. ¶¶ 232, 234, 238. To borrow the Supreme Court's phrase in

DEFENDANTS' MOTION TO DISMISS – 20
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Wilson*, Smith "did not exactly cower silently." 595 U.S. at 479. Where a politically-appointed official in a supervisory role over the alleged retaliators demonstrates that she was wholly undeterred, she cannot establish that Defendants' conduct would chill a person of ordinary firmness in her position.

### 2.    Smith does not allege that she engaged in protected speech as a private citizen

Smith's claim fails for the independent reason that all of her alleged protected speech was undertaken in her official role as a commissioner—the legal equivalent of a public employee performing her job duties.

To establish a First Amendment retaliation claim, a plaintiff must demonstrate that "the speech was spoken in the capacity of a private citizen and not a public employee." *Eng*, 552 F.3d at 1071 (applying *Garcetti*, 547 U.S. 418). Speech which "owes its existence to a [public] employee's professional responsibilities is *not* protected," and the plaintiff bears the burden of demonstrating that her speech was made in her capacity as a private citizen. *Id.* at 1075 (cleaned up).

Smith cannot carry that burden. Every specific act of alleged protected activity in the Complaint—her votes, her statements during Commission proceedings, her committee chair activities, her oversight of agency management—was undertaken pursuant to her official Commission duties. The Complaint does not identify a single concrete instance of Smith speaking or acting as a private citizen.

That Smith is an appointed Commissioner rather than a standard government employee does not change the analysis. *See Sullivan v. Univ. of Washington*, 60 F.4th 574, 581 (9th Cir. 2023) ("The rules governing public employee speech also apply to government volunteers.") (cleaned up) (collecting cases); *cf. Boquist v. Courtney*, 32 F.4th 764, 779 (9th Cir. 2022) (holding

DEFENDANTS' MOTION TO DISMISS – 21
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

that *Garcetti* principle does not apply to *legislators* because the "rationale for allowing the government to restrict the speech of government employees and contractors is not applicable to elected officials," who "are not speaking as employees of the government"). In *Sullivan*, the Ninth Circuit concluded that the appointed members of a part-time university committee "formed by the government to discharge an official purpose" were not engaging in First Amendment protected activity when they fulfilled their official duties. 60 F.4th at 581.

Smith's actions that allegedly led to retaliation were all taken in her role as a Commissioner. The sole allegation to the alternative, that Smith "express[ed] her disagreement with Susewind and Windrope on numerous issues, both as a part of her service as a commissioner and separate and apart from that service" is conclusory and insufficient. Compl. ¶ 232. She fails to identify a single statement or alleged expressive activity that she undertook that both (1) was not in her role as a Commissioner and (2) allegedly motivated adverse action against her. Rather, the Complaint frames her conduct in explicitly official terms at every turn.

***Casting official votes****.* Smith alleges retaliation for votes she cast as a commissioner on spring bear hunting, wolf downlisting, hatchery policy, and cougar hunting rules. Compl. ¶¶ 98–100, 120–23. Voting is a quintessentially official act and not entitled to constitutional protection. *See Linthicum v. Wagner*, 94 F.4th 887, 893 (9th Cir. 2024) ("Voting may be the quintessential exercise of the legislator's apportioned share of the legislature's power . . . .") (cleaned up).

***Statements during official proceedings.*** Smith alleges retaliation for statements made during Commission meetings and workshops—challenging Susewind's representations during deliberations, Compl. ¶¶ 98, 112, expressing concerns about agency policy during public meetings, *id.* ¶ 129, and voicing dissent from management recommendations throughout her tenure, *id.* ¶ 115. These "official actions," too, "tend[ed] to the passage or defeat of a particular proposal" to the

DEFENDANTS' MOTION TO DISMISS – 22
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Commission and thus are "properly understood as a prerogative of membership in that body." *Linthicum*, 94 F.4th at 893 (cleaned up).

***Chairing committee proceedings.*** Smith alleges retaliation for her activities as chair of the wildlife committee, including organizing panel discussions and managing the committee's agenda. Compl. ¶¶ 195–99. These activities were expressly undertaken in her official capacity as committee chair, a role formally assigned within the Commission's governance structure.

***Official oversight of agency management.*** Smith alleges retaliation for "tak[ing] the lead on the Commission in advocating on behalf of employee welfare and safety, engaging with [a WDFW employees' union] and concerned employees." *Id.* ¶ 140. Such agency management actions to promote workplace safety are paradigmatically official acts. *See, e.g.*, *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 916 (7th Cir. 2011) (workplace safety complaints were official acts unprotected under *Garcetti* exception); *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 205 (2d Cir. 2010) (same).

There is no plausible argument that any of these actions constitute private citizen speech under *Eng* and *Sullivan*. The Complaint frames Smith's conduct in official terms throughout: her protected speech related to "WDFW governance, wildlife policy, and agency accountability" expressed "during Commission policy debates," Compl. ¶ 230; she "disputed recommendations made by Susewind and Windrope" since she "started as a commissioner in 2021," *id.* ¶ 115; and she "took the lead on the Commission" on safety issues, *id.* ¶ 140. These are descriptions of a commissioner performing official duties. Smith has not identified a single instance of protected private citizen speech, and her claim fails under *Garcetti*.

DEFENDANTS' MOTION TO DISMISS – 23
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### 3.    Smith's claim is also barred by the political nature of her role

Smith's claim fails for another independent reason. Even if she were not speaking pursuant to her official duties, her status as an appointed policymaker forecloses any First Amendment retaliation claim.

"It is settled . . . that an appointed public official can be removed for engaging in otherwise protected First Amendment activity if political affiliation is an appropriate requirement for the effective performance of the public office involved." *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1241 (9th Cir. 2023) (cleaned up). Under this doctrine, often called the *Elrod-Branti* framework, "an employee's status as a policymaking or confidential employee [is] dispositive of any First Amendment retaliation claim." *Walker v. City of Lakewood*, 272 F.3d 1114, 1131 (9th Cir. 2001) (cleaned up); *see Elrod v. Burns,* 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980). If the Court determines the plaintiff was a "policymaker," the claim fails. *Id.* at 1132.

In determining whether a plaintiff is a policymaker, the overarching inquiry is whether "commonality of political purpose" is an appropriate requirement for the plaintiff's position. *Id.* (cleaned up). Several non-exhaustive factors guide this inquiry: "vague or broad responsibilities, . . . relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders," as well as "the purpose of the particular position." *Id.* (cleaned up). "The most critical factor is [plaintiff's] influence" over policies and programs. *Id.* at 1133. It is immaterial whether the plaintiff is an employee, independent contractor, or a volunteer, so long as her duties are those of a policymaker. *Lathus*, 56 F.4th at 1242 (concluding appointed volunteer lacked First Amendment protections).

DEFENDANTS' MOTION TO DISMISS – 24
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

In *Walker*, 272 F.3d at 1133, the Ninth Circuit found that an independent fair housing contractor was a policymaker because of its "wide-ranging control" over the City's fair housing program, its technical competence, and the public perception of its official authority—and noted that performing the role "often ha[s] political implications."

Smith satisfies the *Walker* factors. She was appointed for specialized expertise, Compl. ¶ 66, wields broad statutory authority over fish and wildlife policy, RCW 77.04.055, holds power to hire and fire WDFW's director, Compl. ¶ 29, meets annually with the Governor, RCW 77.04.055, and operates in an environment the Complaint describes as politically charged and responsive to political leadership, *see* Compl. ¶¶ 94–98, 153–55. The most critical factor—influence over programs—is evident: commissioners set binding state wildlife policy, exercise final agency budget approval authority, and hold hiring-and-firing power over the Director. *Walker*, 272 F.3d at 1133. Her claim is barred under *Elrod-Branti*.

### 4.     Smith's claims fail under *Pickering* balancing

Even assuming Smith meets her burden to demonstrate a prima facie case of retaliation, her claim still fails because the "state's legitimate administrative interests outweigh the employee's First Amendment rights." *Eng*, 552 F.3d at 1071 (cleaned up). Smith does not dispute the underlying facts that prompted the Memo's compliance concerns—her personal email use after being directed to stop, her meetings with Davis during active WDFW litigation, or her continued advocacy for commissioner attendance at the webinar after receiving OPMA guidance. *See supra* subsection III.C.1.a. She concedes WDFW's PRA obligations generated records implicating compliance questions about how commissioners conducted official business. Compl. ¶ 152. Courts grant public employers "wide discretion" in managing personnel matters, including the "prerogative to remove employees whose conduct hinders efficient operation." *Moran v.*

DEFENDANTS' MOTION TO DISMISS – 25
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Washington*, 147 F.3d 839, 846 (9th Cir. 1998) (cleaned up). The state's legitimate interest in merely *investigating* undisputed compliance concerns arising from its own PRA obligations outweighs any First Amendment interest Smith can assert in not being investigated. Accordingly, her claim fails under *Pickering* as well.

### D.     The Court Should Dismiss Nonprofit Plaintiffs' Claims

Nonprofit Plaintiffs' retaliation claim fails for reasons independent of and additional to those that defeat Smith's claim. Their primary allegations are derivative of the alleged retaliation against Smith: they claim injury from adverse action directed not at them, but at a commissioner they consider an ally. Even setting aside that threshold deficiency, their own allegations affirmatively defeat their claim.

As in the public employment context, a private-citizen plaintiff alleging First Amendment retaliation must identify an "adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity." *O'Handley v. Weber*, 62 F.4th 1145, 1163 (9th Cir. 2023) (cleaned up). Typically, plaintiffs satisfy this element by alleging "exercise[s] of governmental power that are regulatory, proscriptive, or compulsory in nature and have the effect of punishing someone for his or her speech." *Mulligan*, 835 F.3d at 988 (cleaned up). But Nonprofit Plaintiffs were not the subjects of any exercise of governmental power. They were not subjects of the OFM investigation, were not named in the Memo as targets of any official action, and have not been restricted from appearing before the Commission, filing litigation against WDFW, or engaging in any of their advocacy activities. The adverse action they identify—an investigation into Smith—was directed at *Smith*, not at them. Defendants are unaware of any case holding that adverse action directed at a third-party government official gives rise to a First

PACIFICA LAW GROUP  LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Amendment retaliation claim by a private advocacy organization that supported that official. That deficiency alone requires dismissal.

Even looking past that threshold problem, Nonprofit Plaintiffs cannot show objectively chilling conduct. Claims based on retaliatory speech by a government official face "a high bar"; plaintiffs must allege harm akin to "state action affecting [a plaintiff's] rights, benefits, relationship or status with the state" rising above mere reputational harm or subjective chilling. *Mulligan*, 835 F.3d at 988–89 (cleaned up). The objective inquiry also takes into account the plaintiffs' circumstances. *See supra* subsection III.C.1.c (citing *Wilson*, 595 U.S. at 478).

Here, Nonprofit Plaintiffs are sophisticated environmental advocates who entered the political arena specifically to influence contested state wildlife policy. They should reasonably expect that government officials may push back against their advocacy, characterize their positions unfavorably, and take actions with which they disagree. Being described as "animal rights" and "anti-hunting" activists, Compl. ¶ 254, is not objectively chilling to an organization whose own mission statement calls for WDFW to "recogniz[e] the intrinsic value of individual animals," *id.* ¶ 250. The alleged backlash from pro-hunting groups, *id.* ¶ 224, reflects the ordinary friction of contested political advocacy, not governmental retaliation. And vague allegations of diminished effectiveness and obstacles to achieving advocacy goals, *id.* ¶¶ 261–62, describe the everyday rough-and-tumble of political advocacy campaigns, not constitutionally actionable harm. *See Capp*, 940 F.3d at 1054–55 (objective standard not met by subjective experience of chilling). By their own account, Nonprofit Plaintiffs "ha[ve] been successful at dramatically increasing public engagement on state fish and wildlife issues." Compl. ¶ 83. Nonprofit Plaintiffs' claims should be dismissed with prejudice.

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### E.        Qualified Immunity Bars the Individual-Capacity Claims

In addition to failing on the merits, Plaintiffs' claims against the Defendants in their individual capacities are also barred by qualified immunity. Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Generally, for a right to be "clearly established," the plaintiff must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (cleaned up). That "precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply," i.e., "they could have read the relevant precedent beforehand and known that it proscribed their specific conduct." *Id.* (cleaned up). The Ninth Circuit has explained that "[b]ecause the underlying determination pursuant to *Pickering* whether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity . . . ." *Moran*, 147 F.3d at 847.

Plaintiffs cannot meet their burden to establish a binding, on-point precedent, for this case presents at least four unsettled legal questions, any one of which independently entitles Defendants to qualified immunity: whether a retaliatory investigation per se violates the First Amendment, *Moore*, 83 F.4th at 752–53 (answering no); whether *Eng* and *Garcetti* apply to appointed commissioners, *see Sullivan*, 60 F.4th at 581 (answering yes); whether a subordinate official can face retaliation liability for raising concerns about his supervisor through official channels to the appointing authority; and whether internal government characterizations of a private advocacy

DEFENDANTS' MOTION TO DISMISS – 28
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

organization, or an investigation into officials who associated with it, gives rise to a retaliation claim by the organization itself. Defendants cannot be held liable for failing to anticipate the resolution of questions that neither the Supreme Court nor the Ninth Circuit has yet answered. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

### F.      Leave to Amend Should Be Denied

Leave to amend should be denied where amendment would be futile, as it is here. *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 845 (9th Cir. 2014) (affirming dismissal with prejudice when district court "noted the exhaustive length of the [] complaint and explained that it could not 'conceive of any new facts that could possibly cure the pleading.'"). Plaintiffs' 82-page Complaint is not a bare-bones pleading, curable through additional factual allegations. To the contrary, the Complaint's detailed allegations establish the deficiencies in Plaintiffs' claims: Smith's conduct was official because the Complaint says it was, the investigation has produced no adverse consequence because the Complaint concedes it has not, and Defendants are Smith's subordinates because the Complaint's description of the governance structure makes that unmistakably clear. As for Nonprofit Plaintiffs, the Complaint establishes that the bar complaints and social media hostility they suffered were caused by third parties—not Defendants—and that the organizational harms WW1 alleges are derivative of conduct directed at Smith—not WW1. No amendment can change these facts.

## IV.      CONCLUSION

For the reasons above, Plaintiffs' Complaint should be dismissed with prejudice.

/ / /

/ / /

/ / /

DEFENDANTS' MOTION TO DISMISS – 29
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

I certify that this memorandum contains 8,391 words, in compliance with the Local Civil Rules.

DATED this 22nd day of June, 2026.

PACIFICA LAW GROUP LLP

By: /s/ W. Scott Ferron
    Zachary J. Pekelis, WSBA #44557
    W. Scott Ferron, WSBA #61154
    Carly Zipper, WSBA #60598
    *Attorneys for Defendants Susewind and Windrope*

DEFENDANTS' MOTION TO DISMISS – 30
No. 3:26-cv-05333-TMC

PACIFICA LAW GROUP LLP
401 UNION STREET
SUITE 1600
SEATTLE, WASHINGTON 98101-2668
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750